UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RIVER HOUSE PARTNERS, LLC**                          **CIVIL ACTION**

**VERSUS**

**GRANDBRIDGE REAL ESTATE**              **NO.: 15-00058-BAJ-RLB**
**CAPITAL LLC**

RULING AND ORDER

Before the Court is a **Motion to Dismiss (Doc. 10)** filed by Defendant

Grandbridge Real Estate Capital LLC, ("Grandbridge"), seeking to dismiss Plaintiff

River House Partners, LLC's ("River House") Complaint (Doc. 1-2) pursuant to

Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon

which relief may be granted. River House opposes this motion, (Doc. 11), and

Grandbridge has filed a reply, (Doc. 14). Jurisdiction is proper pursuant to 28

U.S.C. § 1332. Oral argument is not necessary. For reasons explained herein,

Grandbridge's motion is **GRANTED** in part and **DENIED** in part.

## I.   BACKGROUND

River House asserts that, in May 2009, pursuant to a written lending

application agreement ("the Agreement"), Grandbridge agreed to work on River

House's behalf to secure a HUD-insured loan for construction and permanent

financing of a multi-family development in Baton Rouge. (Doc. 1-2 at p. 2). River

House asserts in its Complaint that Grandbridge failed to timely and effectively

secure a commitment from HUD to insure a loan. (*Id.*). Furthermore, River House

claims that a commitment eventually made by HUD to insure a loan for the Baton Rouge development was lost because of Grandbridge's actions or inactions. (*Id.*). As a result, River House asserts that the opportunity to secure another HUD-insured loan under the previous terms and conditions has been lost. (*Id.*). River House avers that the delays allegedly caused by Grandbridge's action and inaction have caused it to suffer increased costs related to the Baton Rouge development. (*Id.*).

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a Rule 12(b)(6) motion, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto." *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*Twombly*, 550 U.S. at 556).

Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

The Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quotation marks and citations omitted). However, "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, ___, 135 S. Ct. 346, 346 (2014) (per curiam).

## III. DISCUSSION

The Complaint alleges five violations of state law. Evaluating each claim separately, the Court will assess whether River House's claims survive Grandbridge's Rule 12(b)(6) Motion to Dismiss.

3

### 1.  Breach of Contract

"Under Louisiana law, the essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 2010-0986, pp. 14—16 (La. App. 4 Cir. 2/9/11); 68 So.3d 1099, 1109, *writ denied*, 2011-0636 (La. 5/6/11); 62 So.3d 127. *See also Hercules Machinery Corp. v. McElwee Bros., Inc.,* No. Civ. A. 01—3651, 2002 WL 31015598 at *9 (E.D.La. Sept. 2, 2002) ("The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages"). "A failure to perform results from nonperformance, defective performance, or delay in performance." LA. CIV. CODE ANN. art. 1994 (2015). Under Louisiana's Credit Agreement Statute, "all actions based on a credit agreement are barred unless the agreement is, *inter alia*, in writing and signed by the creditor and debtor." *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 468 (5th Cir. 2006) (*citing* LA. REV. STAT. § 6:1121 *et seq.*; *Jesco Constr. Corp. v. Nationsbank Corp.*, 2002-0057, pp. 3—5 (La. 10/25/02); 830 So.2d 989, 991—92).

Grandbridge argues that River House's breach of contract claim must fail because: (1) the Agreement was simply an application for a loan that was predicated upon certain conditions that were not met, and (2) the Agreement was not a binding credit agreement. (Doc. 10-1 at p. 11—14). River House asserts that the Agreement, set forth in writing and signed by the parties, is a binding credit agreement which

obligated Grandbridge to lend once HUD committed to insure a loan for the Baton Rouge development. (Doc. 1-2; Doc. 11 at pp. 12—15). River House also asserts that the Agreement—whether a credit agreement or not—imposed obligations on Grandbridge beyond the obligation to lend money. (Doc. 1-2 at pp. 4—5; Doc. 11 at pp. 17—18).

River House attached a copy of the Agreement to its Complaint, (Doc. 1-2 at pp. 14—21), and cited, *inter alia*, the following language indicating that Grandbridge undertook various obligations:

> a. At the application phase, Lender (Grandbridge) shall:
> i. Prepare the HUD Pre-Application and HUD Firm Application packages, including HUD form 92013, Application for Multifamily Housing Project, and all Exhibits to be submitted therewith;
> ii. Submit the HUD Pre-Application package and the HUD Firm Application package to HUD on behalf of Borrower; and
> iii. Monitor the pre-application processing and firm application underwriting, work with HUD to resolve any issues that may arise, and follow-up with Borrower regarding the status of both the HUD Pre-Application and the HUD Firm Application Packages;
>
> b. Subsequent to receipt of a HUD Firm Commitment, Lender (Grandbridge) shall:
> i. Work with Borrower to lock in an interest rate acceptable to Borrower;
> ii. Obtain competitive quotes in the secondary market for the sale of the Loan Securities to provide Borrower with the most favorable financing terms available at the time of Rate Lock;
> iii. Advise Borrower on the terms and conditions of the HUD firm Commitment;
> iv. Work with Borrower, Borrower's counsel, and HUD in order to expedite the loan closing process;
> v. Provide funding, either by use of a warehouse line of credit or the sale of Loan Securities, for loan closing; and
> vi. Attend the loan closing and initial endorsement.

(Doc. 1-2 at pp. 4—5). Relative to these contractual provisions, the Complaint asserts that River House promptly provided Grandbridge with any document or payment it requested and that "[a]lthough Grandbridge represented that it had sufficient information to prepare and submit the Firm Application package, HUD found numerous deficiencies" in their submissions. (Doc. 1-2 at pp. 6—7). River House further asserts that deficiencies in the application process were often a result of dilatory submissions by Grandbridge, which prolonged the period required to obtain a firm commitment from HUD, which in turn delayed progress on the development. (*Id*. at pp. 7—8). As a result of these allegedly flawed and dilatory submissions, the Complaint asserts that a commitment eventually made by HUD on the project expired, and consequently, a new application is necessary. (*Id*. at p. 8).

For purposes of satisfying the standard set forth in Rule 12(b)(6), these facts, as alleged, support River House's claims that Grandbridge breached, or failed to perform, the terms set forth in the Agreement. With respect to any obligation to lend, River House has not conceded that its claim was based on any oral representations by Grandbridge. *See EPCO Carbon Dioxide Products, Inc.*, 467 F.3d 466, 470—71. River House has alleged that Grandbridge's failure to abide by the terms of the Agreement caused it to suffer damages. (Doc. 1-2 at pp. 8, 10). **Accepting the veracity of River House's well-pleaded factual allegations, the Court finds that they plausibly give rise to an entitlement to relief for breach of contract.** Accordingly, Grandbridge's motion to dismiss River House's breach of contract claim is **DENIED**.

## 2.  Bad Faith Breach of Contract

"An obligor is in bad faith if he intentionally and maliciously fails to perform his obligation." LA. CIV. CODE ANN. art. 1997 Comment (b). Thus, as Grandbridge has pointed out, "bad faith" does not mean "the mere breach of faith in not complying with a contract, but a designed breach of it from some motive of interest or ill will." *Am. Bd. of Pediatrics, Inc. v. Gates*, CIV. A. No. 88—3136, 1989 WL 23816, at *1 (E.D. La. Mar. 15, 1989) (*citing Williams v. Coe*, 417 So.2d 426, 430 (La. App. 1 Cir. 1982)). Put differently, "[t]he term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives." *Volentine v. Raeford Farms of Louisiana, L.L.C.*, 48,219, p. 19 (La. App. 2 Cir. 7/24/13); 121 So.3d 742, 753, *writ denied*, 2013-2493 (La. 1/17/14); 130 So.3d 948.

Grandbridge argues that River House "failed to identify facts sufficient to demonstrate actionable contractual bad faith . . ." (Doc. 10-1 at p. 18). River House asserts that Grandbridge engaged in intentional misrepresentations because it often claimed it had timely submitted documents when, in fact, documents were submitted late. (Doc. 11 at pp. 24—25). The linchpin underlying all of River House's claims is that Grandbridge breached the Agreement by way of delay and ineffective assistance (Doc. 1-2 at pp. 2, 7—10); nowhere does the Complaint allege facts indicative of a malicious failure to perform. Thus, without more, this Court is unable to make a reasonable inference that Grandbridge's alleged contractual failings were derived from a conscious doing of wrong for dishonest or morally

questionable motives. *See, e.g., Industrias Magromer Cueros y Pieles S.A. v. Louisiana Bayou Furs Inc.*, 293 F.3d 912, 922 (5th Cir. 2002).

Consequently, this Court finds that River House's bad faith breach of contract claim has not been alleged with sufficient plausibility and must be dismissed. Accordingly, Grandbridge's motion to dismiss River House's bad faith breach of contract claim is **GRANTED**.

### 3. Negligence

To maintain a cause of action for negligence under Louisiana law, a plaintiff must show: "(1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element)." *Perkins v. Entergy Corp.*, 2000-1372, p. 7 (La. 3/23/01); 782 So.2d 606, 611.

Grandbridge argues that River House's negligence action must fail because under Louisiana law, "a lender owes no duty of care actionable in tort to borrowers or prospective borrowers . . ." in "arm's length transactions . . ." (Doc. 10-1 at p. 23). The distinction between a contract claim and tort claim is that a contract claim arises out of a breach of duty imposed by mutual agreement, while a tort claim arises out of breaches of duties imposed by law as a matter of social policy. *See, e.g.,*

8

*Trinity Universal Ins. Co. v. Horton*, 33,157 (La. App. 2 Cir. 4/5/00); 756 So.2d 637, 638. As River House points out, however, under Louisiana law "[i]t is well settled that the same acts or omissions may constitute a breach of both general duties and contractual duties and may give rise to both actions in tort and actions in contract." *Ridge Oak Dev., Inc. v. Murphy*, 641 So.2d 586, 588 (La. App. 4 Cir. 06/30/94), *writ denied*, 94-2565 (La. 12/16/94); 648 So.2d 389.

River House asserts that pursuant to the Agreement, Grandbridge was dilatory and careless in submitting required paperwork to HUD, (Doc. 1-2 at pp. 7—10), and that it "failed to act with reasonable diligence in pursuing these duties," (Doc. 1-2 at p. 11). River House also alleges that Grandbridge's failures caused it to suffer damages. (Doc. 1-2 at pp. 8, 10). Accepting the veracity of River House's well-pleaded factual allegations, the Court finds that such allegations plausibly give rise to an entitlement to relief under negligence principles. Accordingly, Grandbridge's motion to dismiss River House's negligence claim is **DENIED**.

### 4. Breach of Fiduciary Duty

Under Louisiana law, "a cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority." *Gerdes v. Estate of Cush*, 953 F.2d 201, 205 (5th Cir. 1992). "Generally, whether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties. As a basic proposition, for a fiduciary duty to exist, there must be a fiduciary relationship

between the parties." *Scheffler v. Adams & Reese, LLP*, 2006-1774, p.6 (La. 2/22/07); 950 So.2d 641, 647.

Both parties focus on the applicability of Louisiana Revised Statute 6:1124, (Doc. 10-1 at pp. 21—23; Doc. 11 at pp. 25—26; Doc. 14 at pp. 4—5), which, in pertinent part, states:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.

By River House's own admission, Grandbridge asserts that it is a "financial institution" because it provides "lending" services in Louisiana. (Doc. 1-2 at p. 2). Therefore, Grandbridge asserts that it was not in a fiduciary relationship with River House because the Agreement did not contain express language to that effect. (Doc 10-1 at p. 22). River House, on the other hand, asserts that Grandbridge is not a "financial institution" under the meaning of the statute and, as such, its requirements do not apply to the Agreement. (Doc. 11 at p. 26). To buttress its position, River House relies on definitions contained in Louisiana Revised Statute 6:1121, which states that a "[f]inancial institution means a bank, savings and loan association, savings banks, or credit union authorized to transact business in this state." (internal quotations omitted).

Nonetheless, River House also asserts in the alternative that the Agreement qualifies as a "written agency or trust agreement" whereby Grandbridge specifically

agreed to act as a fiduciary as a consequence of the obligations it undertook apart from lending money. (Doc. 11 at pp. 27—28). As River House points out, "the petition alleges that the Agreement conferred authority to Grandbridge to transact 'on River House's behalf . . .'" so that Grandbridge could use its expertise to guide River House through the HUD loan application and approval process. (Doc. 1-2 at pp. 2, 4; Doc. 11 at p. 28).

River House asserts that in light of Grandbridge's representations and the obligations it undertook pursuant to the Agreement, (Doc. 1-2 at pp. 4—5), it "deferred completely to Grandbridge" to interact with HUD on its behalf, (Doc. 1-2 at p. 5). Accepting the veracity of River House's well-pleaded factual allegations, the Court finds that they plausibly give rise to an entitlement to relief for breach of fiduciary duty. Accordingly, Grandbridge's motion to dismiss River House's claim for breach of fiduciary duty is **DENIED**.

### 5. Specific Performance

Upon an obligor's failure to perform an obligation to do, the granting of specific performance is at the discretion of the court. *See* LA. CIV. CODE ANN. art. 1986 (2015). Under Louisiana's civil law system, specific performance is the preferred remedy for breach of contract. An obligee enjoys the right to demand, insofar as is practicable, the specific performance of the obligation. *See Lombardo v. Deshotel,* 94–1172 (La. 11/30/94); 647 So.2d 1086, 1090; *see also* LA. CIV. CODE ANN. art. 1986 (2015). This right exists except when specific performance is impossible, greatly disproportionate in cost to the actual damage caused, no longer in the

creditor's interest, or of substantial negative effect upon the interests of third parties. *See J. Weingarten, Inc. v. Northgate Mall, Inc.,* 404 So.2d 896, 901 (La. 1981).

In its Complaint, River House alleges that once HUD issued a firm commitment to insure the loan described in the Agreement, Grandbridge was obligated to make the loan. (Doc. 1-2 at p. 12). River House also acknowledges in its Complaint, however, that HUD has now withdrawn its firm commitment and a new application process is required. (*Id*. at p. 8). It is clear from River House's Complaint that the approval process for a HUD insured loan is subject to uncertainty because HUD retains discretion to issue or reject any application subject to its terms and conditions. (Doc. 1-2).

Specific performance is an inappropriate remedy when it is contingent upon events beyond the control of the parties. *See e.g. Landry & Passman Realty, Inc. v. Keen*, 170 So.2d 775, 778 (La. Ct. App. 1964). While it may be possible that a new HUD application will ultimately bear fruit, (Doc. 11 at p. 31), the discretionary action required by HUD to obtain what River House is seeking renders specific performance unfeasible. For this reason, this Court finds that Grandbridge's motion to dismiss River House's claim for specific performance is **GRANTED**.

IV.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Grandbridge's **Motion to Dismiss (Doc. 10)** is **GRANTED** in part and **DENIED** in part.

The **Motion to Dismiss** is **GRANTED** with respect to River House's claims for bad faith breach of contract and specific performance. The **Motion to Dismiss** is **DENIED** with respect to River House's claims for breach of contract, negligence, and breach of fiduciary duty.

**IT IS FURTHER ORDERED** that River House's claim against Grandbridge for specific performance is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that River House's bad faith breach of contract claim is **DISMISSED WITHOUT PREJUDICE** with leave to amend.

Baton Rouge, Louisiana, this ___19th___ day of October, 2015.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

13