UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RIVER HOUSE PARTNERS, LLC                    CIVIL ACTION

VERSUS                                                              NO. 15-58-BAJ-RLB

GRANDBRIDGE REAL ESTATE
CAPITAL LLC

## ORDER

Before the Court is Plaintiff's Motion for Protective Order Pursuant to Rule 26(c). (R. Doc. 34). The motion is opposed. (R. Doc. 36).

Also before the Court is Plaintiff's Motion to Quash Pursuant to Rule 45 and for Protective Order Pursuant to Rule 26. (R. Doc. 35). Plaintiff supplemented its motion by providing copies of the subpoenas at issue. (R. Doc. 44). The motion is opposed. (R. Doc. 47).

### I.   Background

#### A.   Procedural Background

River House Partners, LLC ("Plaintiff") originally filed this action for bad faith breach of contract, breach of contract, negligence, breach of fiduciary duty, and specific performance in state court on December 19, 2014. (R. Doc. 1-2). Plaintiff asserts that, in May of 2009, pursuant to a written lending application agreement ("the Agreement"), Grandbridge Real Estate Capital, LLC ("Defendant") agreed to work on Plaintiff's behalf to secure a HUD-insured loan for construction and permanent financing of a multi-family development in Baton Rouge. (R. Doc. 1-2 at 2). Plaintiff alleges that Defendant failed to timely and effectively secure a commitment from HUD to insure a loan. (R. Doc. 1-2 at 2). Plaintiff also alleges that a commitment eventually made by HUD to insure a loan for the Baton Rouge development was lost because of Defendant's inaction. (R. Doc. 1-2 at 2). As a result, Plaintiff asserts it has now lost the

opportunity to secure another HUD-insured loan under the previously established terms and conditions. (R. Doc. 1-2 at 2). Plaintiff states that the delays have caused it to suffer increased costs to the Baton Rouge development. (R. Doc. 1-2 at 3).

Defendant removed the action on February 5, 2015 on the basis of diversity jurisdiction. (R. Doc. 1).

On March 13, 2015, Defendant filed a Rule 12(b)(6) motion to dismiss. (R. Doc. 10). The Court granted the motion with respect to Plaintiff's claims for bad faith breach of contract and specific performance, and denied the motion with respect to Plaintiff's claims for breach of contract, negligence, and breach of fiduciary duty. (R. Doc. 27).

In February of 2016, Defendant served Rule 45 subpoenas *duces tecum* on Howard Chesin, CPA, P.C.; Mariana K. Dulin CPA, P.C.; Silva, Gurtner, & Abney, LLC; and Carr, Riggs & Ingram, LLC ("Accountants"). (R. Doc. 36-1).

In March of 2016, Defendant served Rule 45 subpoenas *duces tecum* on First Bank and Trust Community Development Corporation; First NBC Bank Holding Company, LLC; First NBC Bank; Merrill Lynch, Pierce, Fenner & Smith, Inc. of Baton Rouge, Louisiana; Merrill Lynch Pierce, Fenner & Smith, Inc. of Jacksonville, Florida; Three Shores Bancorporation, Inc.; JP Morgan Chase Bank, NA ("Financing Institutions").[1] (R. Doc. 44-1 to 44-7).

Plaintiff's first Motion (R. Doc. 34) seeks a protective order limiting the scope of the subpoenas served on the Accountants. Plaintiff asserts "that any documents produced pursuant to the Notices and Subpoenas must be only non-privileged materials relevant to the instant

---

[1] Defendant also served subpoenas on the U.S. Department of Housing and Urban Development, Office of Insured Housing; U.S. Department of Housing and Urban Development, New Orleans Field Office; and U.S. Department of Housing and Urban Development, Fort Worth Office ("HUD Entities"). (R. Docs. 44-8 to 44-10). While those subpoenas were originally subject to one of Plaintiff's motions, on June 22, 2016, Plaintiff informed the Court that it no longer seeks any relief regarding those subpoenas. (R. Doc. 56).

2

litigation, marked confidential and, if they are filed into the record, that they be []filed under seal." (R. Doc. 34 at 1).  Plaintiff requests the Court to order the Accountants to "produce any relevant documents to undersigned counsel *first*, so that counsel may review for privileged materials and create a privilege log." (R. Doc. 34 at 1).

In opposition, Defendant argues that the information it seeks is "relevant, non-privileged financial information from Plaintiff's accountants in this complicated financial case." (R. Doc. 36 at 1).  Defendant asserts that "[b]ecause the underlying financial condition of Plaintiff (both prior to and during the loan application in this case) is undoubtedly pertinent to the determination of whether Plaintiff could close the subject loan, or whether Plaintiff omitted material information in seeking the funds from Grandbridge, the discovery sought is relevant." (R. Doc. 36 at 2).  Furthermore, Defendant contends that because Plaintiff is alleging damages such as increased construction and financing costs, and lost profits, "[u]nderstanding the extent and amount of these alleged damages is an exercise only accomplished upon a review of Plaintiff's financial information." (R. Doc. 36 at 2).

Plaintiff's second Motion (R. Doc. 35) seeks on order quashing the subpoenas served on the Financial Institutions and/or a protective order limiting the scope of those subpoenas. Plaintiff argues that the Notices and Subpoenas must be quashed because Defendant failed to adhere to La. R.S. § 6:333 for obtaining the Financial Institutions' records and has not established that the requests are relevant and justified by good cause. (R. Doc. 35 at 2).  Plaintiff further asserts that the requests "exceed the scope of this litigation" and are "voluminous, and contain sensitive and privileged financial information." (R. Doc. 35 at 2).  As with the subpoenas directed at the Accounts, Plaintiff seeks an order limiting the production to non-privileged

3

materials, requiring confidential documents to be marked and filed under seal, and allowing Plaintiff's counsel to conduct a privilege review prior to production. (R Doc. 35 at 2).

In opposition, Defendant contends that it complied with the requirements under La. R.S. § 6:333. Defendant argues that the information sought by the Notices and Subpoena requests is relevant because it would allow Defendant to test Plaintiff's assertions of damages and would "shed light on (and prove or disprove) such claims." (R. Doc. 47 at 2-3). Furthermore, Defendant contends that "this Court has explicitly found that financial records in the possession of third-party banks are not privileged." (R. Doc. 47 at 2).

The deadline to complete all discovery in this action is set for December 31, 2016. (R. Doc. 55).

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii)

4

the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

This Court has stated that "[w]hile the court has broad discretion concerning discovery, it does not have broad discretion to allow [a party] wholesale access" to all documents and/or communications "without a showing that the information may lead to evidence admissible at trial." *See Conner v. Louisiana Dep't of Health & Hosp.*, No. 02-284, 2008 WL 5211003, at *2 (M.D. La. Dec. 9, 2008).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). On timely motion, the court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The moving party has the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

5

**B.     Analysis**

    **1.     Standing**

The first issue the court must address is whether, and to what extent, Plaintiff has standing to challenge the Rule 45 subpoenas served on the non-parties. *See Rice v. Reliastar Life Ins. Co.*, No. 11-44, 2011 WL 5513181, at *1 (M.D. La. Nov. 10, 2011) ("The Court's first inquiry in ruling on a motion to quash a Rule 45 subpoena directed to a non-party, like the subpoenas at issue in this motion, is to determine whether the movant has standing to challenge the subpoena."). Because Plaintiff brings its motion pursuant to both Rule 26(c) and Rule 45(d), the court shall briefly discuss whether it has proper standing pursuant to those rules.

Parties have limited standing to quash subpoenas served on non-parties pursuant to Rule 45. *See Frazier v. RadioShack Corp.*, No. 10-855, 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012) ("[A] plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that it violates another person's privacy rights . . ., that the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds."). Nevertheless, a party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena. *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240 n. 2 (E.D. Va. 2012); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005).

While Plaintiff does not have standing pursuant to Rule 45(d) to modify or quash the subpoenas on the basis of undue burden to the non-parties, it does have standing pursuant to Rule

26(c)(1) to seek a limitation and/or modification of the scope of the subpoenas. Based on the foregoing, the Court concludes that Plaintiff has standing to seek the requested relief.

### 2. The Scope of Production

Defendant's subpoenas directed to the Accountants seek the following summarized categories of information:

> From 2008-present, all documents and communications (including financial statements and/or accounting materials) regarding Plaintiff, any of its principals, or affiliates [Bullet Point Nos. 1, 2, and 10];
>
> From 2008-present, all documents and communications (including notes, meeting minutes, payments, contracts or documents evidencing scope of work, submissions made, etc.) involving the subject real estate project [Bullet Point Nos. 4, 5, 6, 7, 8, 9, 11, and 12];
>
> From 2008-present, all documents, communications, or submissions made to Grandbridge on behalf of Plaintiff, any of its principals, or its affiliates [Bullet Point No. 3]; and
>
> From 2000-present, all documents and communications involving projects or other business transacted with Grandbridge, River House, any principal of River House, or any River House affiliate affiliates [Bullet Point Nos. 13 and 14]

(*See* R. Doc. 36 at 5). Similarly, Defendant's subpoenas directed at the Financial Institutions seek the following categories of information as summarized below by Defendants:

> From 2008-present, all documents and communications (including banking documents and financial records) regarding, belonging to, or involving River House, its principals, or its affiliates, including documents involving the subject real estate development [Bullet Point Nos. 1, 2, 3, 4, 5, and 6];
>
> From 2008-present, all documents and communications (including banking documents and financial records) involving the subject real estate project [Bullet Point Nos. 7, 8, 9, 10, 11, and 12];
>
> From 2000-present, all documents and communications relating to projects and other business transacted with Grandbridge [Bullet Point No. 13]; and
>
> From 2000-present, all documents and communications relating to projects or other business transacted with River House, its principals, or its affiliates [Bullet Point No. 14]

(*See* R. Doc. 47 at 6-7).

Having reviewed the information sought in the subpoenas directed at both the Accountants and Financial Institutions, the Court concludes that the subpoenas seek relevant information reflecting Plaintiff's overall financial conditions (before, during, and after loan application and ultimate denial) that may lead to admissible evidence demonstratig the harm done to Plaintiff's financial conditions as a result of not obtaining the HUD-backed loan. The financial projections of the Project are relevant as they may demonstrate the extent of the loss of profits/damages that Plaintiff seeks to recover.[2] Plaintiff's change in financial conditions over the course of the loan application is relevant to both the extent of damages and Defendant's assertion that Plaintiff was not financially prepared to close on the loan. To the extent the subpoenas seek accounting documents from 2008 through the present that demonstrate Plaintiff's overall financial condition and/or financial involvement regarding the subject real estate project, the information sought is within the scope of discovery.

Some of Defendant's requests, however, are overly broad in both temporal scope and with regard to subject matter. These requests are found in the final two categories in each subpoena (i.e., Bullet Point Nos. 13 and 14). Defendant has not provided a sufficient basis for the relevance of accounting and financial documents far back as the year 2000, or a basis to conclude that such documents exist and are in the possession, custody, or control of the non-parties justifying a search of 16 years of records, as it appears the parties' business relationship regarding the instant real estate development began in 2008. (R. Doc. 1-2 at 4). Moreover, these catch-all categories completely subsume the prior, more narrowly tailored categories relating to

---

[2] Plaintiff seeks to recover damages measured by "[t]he difference in economic value between the HUD guaranteed loan . . . and permanent financing [Plaintiff] was ultimately required to accept; [t]he loss of New Market Tax Credits; [t]he dramatic increases in the cost of construction of the Project; [t]he loss of profits for the period that the Project was not open and generating revenue." (R. Doc. 1-2 at 10).

8

Plaintiff's finances and the subject real estate project. Accordingly, the Court will limit the scope of information sought by the subpoenas by removing the final two categories in each subpoena.[3]

### 3. The Accountant-Client Privilege

Under the Louisiana Code of Evidence, "[a] client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made *for the purpose* of facilitating the rendition of professional accounting services to the client, as well as the perceptions . . . of the mental, emotional, or physical condition of the client." La. Code Evid. Ann. art. 515 (emphasis added). In other words, the accountant-client privilege extends only to those documents and/or communications created as work-product in rendering accounting services. The accountant-client privilege does not extend to the underlying accounting services rendered to the client.

The Rule 45 subpoenas served on the Accounts seeks "any and all accounting materials (to the extent not protected by the accountant-client privilege), including financial statements, worksheet, tax materials, profit/loss statements, schedules . . . spreadsheets, etc. relating to [Plaintiff]." (R. Doc. 36-1). Plaintiff argues that "given (1) the scope and volume of materials requested of the Accountants; (2) the timing of [Defendant's] requests to coincide with tax season; and (3) that matters of privilege are matters of law, and thus outside the scope of the Accountants' expertise," it is likely the third-party Accountants will produce information governed by the accountant-client privilege. (R. Doc. 34-1 at 5).

---

[3] The Court is not holding that any financial information of Plaintiff beyond the instant real estate development or prior to 2008 is outside the scope of discovery. Rather, the Court is only addressing the specific requests at issue in the subpoenas.

9

In light of this concern, the Court will finds it appropriate to require the third-party Accountants to first provide any responsive documents to Plaintiff's counsel for review for information protected by the accountant-client privilege and for the creation of a privilege log pursuant to Rule 26(c)(1)(C).  Once Plaintiff's counsel receives productions of documents from the Accountants, it shall sequentially Bates-stamp the documents immediately upon receipt should the documents have not been Bates-stamped by the producing Accountants.  Plaintiff's counsel may then conduct a privilege review.  Plaintiff's counsel must identify for the Defendants the entire range of Bates-stamped documents produced by the Accountants and identify on a privilege log any of those documents withheld from ultimate production to Defendants on the basis of the accountant-client privilege.  The foregoing protocols will ensure that the integrity of the initial productions to Plaintiff's counsel by the third-party Accountants is preserved should Defendant challenge the ultimate production by Plaintiff.

To the extent Plaintiff has additional concerns regarding the confidentiality of documents to be produced that are not protected by the accountant-client privilege, Plaintiff may designate those documents as "confidential" pursuant to the Joint Protective Order (R. Doc. 22) entered in this case prior to production to Defendant.

### 4.  State Law Requirements on Disclosure of Financial Records

Louisiana law prescribes technical requirements that a party demanding disclosure of financial records must follow before a bank may disclose financial records. La. R.S. § 6:333(C). Plaintiff asserts that the Financial Institutions may not disclose Plaintiff's financial records because it has provided notice to those institutions that it "has taken legal action to enjoin or otherwise restrain the release of the financial records" in accordance with La. R.S. § 6:333(C)(3). (R. Doc. 35 at 1-2).  Furthermore, Plaintiff asserts that Defendant did not follow the

requirements of La. R.S. § 6:333(C) and that "[u]ntil [Defendant] has proved that its discovery requests are relevant and justified . . . [Defendant's] Notices and Subpoenas must be quashed." (R. Doc. 35 at 2).

Contrary to Plaintiff's arguments, this Court has specifically held that La. R.S. § 6:333(C) "does not create a privilege which bars the financial records from discovery if they are relevant evidence or are otherwise discoverable in a particular case." *Keybank Not. Ass'n v. Perkins Rowe Assoc., LLC*, No. 09-497, 2011 WL 90108, at *2 (M.D. La. Jan. 11, 2011). "Rather, the statute only provides for specific procedures to be followed before a customer's financial records may be produced by a bank." *Id*.

Defendant argues that it complied with the technical requirements of La. R.S. § 6:333 "by serving copies of the subpoenas on opposing counsel and providing affidavits to the banks in question reflecting the service of the subpoenas on opposing counsel." (R. Doc. 47 at 7-8). As discussed above, the subpoenas (as limited by the Court) seek discoverable information from the Financial Institutions. Based on the record, the Court concludes that Defendant has satisfied the requirements imposed by La. R.S. § 6:333.

Plaintiff also asserts privilege on the documents and/or communications requested by the Notices and Subpoenas sent to the Financial Institutions due to their "sensitivity." (R. Doc. 35-1 at 9). This privilege claim is meritless. Financial information held by third-party banks is discoverable where such records are relevant to proving a defense. *Frazier v. Radioshack Corp.*, No. 10-855, 2012 WL 832285, at *2 (M.D. La. Mar. 12, 2012). As discussed above, Plaintiff's financial information is relevant to the litigation and is within the scope of discovery. The Court finds no basis for modifying the manner of production to allow Plaintiff's counsel to review the documents to be produced by the Financial Institutions as privileged. In light of the confidential

nature of the documents sought, however, the Court will deem any documents produced by the Financial Institutions to be governed by the Joint Protective Order (R. Doc. 22) entered in this case.  Defendant must treat any documents obtained by the Financial Institutions as such if used in this matter and/or filed with the Court.

**III.    Conclusion**

**IT IS ORDERED** that Plaintiff's Motions (R. Doc. 34; R. Doc. 35) are **GRANTED IN PART** and **DENIED IN PART**.  The Rule 45 subpoenas served on the Accountants and Financial Institutions shall be allowed to the extent they seek documents and information as provided in the first twelve bullet-pointed categories in each subpoena.  The Accountants and Financial Institutions must respond to those categories in the respective subpoenas in full as set forth in this Order.  Responses need not be provided to the final two categories in the subpoenas.

**IT IS FURTHER ORDERED** that the Accountants shall provide to Plaintiff's counsel any documents responsive to the subpoena (regardless of whether such documents are governed by the accountant-client privilege) **within two weeks** of receipt of this Order, or on a date agreed upon by the parties after consulting with the Accountants at issue  If any production by an Accountant is not provided with sequentially stamped Bates numbers, Plaintiff's counsel shall immediately Bates-stamp the document as described above.  Plaintiff's counsel must produce the responsive documents, and a privilege log describing any documents withheld on the basis of the accountant-client privilege and the corresponding Bates range of those documents, **within two weeks** of receipt of the documents from the Accountants, or on a date agreed upon by the parties. Plaintiff must mark as "confidential" any documents to be governed by the Joint Protective Order (R. Doc. 22) entered in this case.

**IT IS FURTHER ORDERED** that the Financial Institutions shall produce all responsive documents to Defendant **within two weeks** of receipt of this Order, or on a date agreed upon by the parties after conferring with the Financial Institution at issue. All documents produced by the Financial Institutions shall be deemed "confidential" in accordance with the Joint Protective Order (R. Doc. 22) entered in this case.

**IT IS FURTHER ORDERED** that Defendant shall send a copy of this Order to each of the Accountants and Financial Institutions **within 3 days** of the issuance of this Order.

Signed in Baton Rouge, Louisiana, on July 11, 2016.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**