UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RIVER HOUSE PARTNERS, LLC            CIVIL ACTION

VERSUS

GRANDBRIDGE REAL ESTATE            NO.; 15-00058-BAJ-RLB
CAPITAL LLC

### RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 91)** filed by Defendant Grandbridge Real Estate Capital LLC ("Grandbridge") against Plaintiff River House Partners, LLC ("River House"). Pursuant to Federal Rule of Civil Procedure 56, Grandbridge seeks an order dismissing the remaining claims against it for breach of fiduciary duty, breach of contract, and negligence.[1] Jurisdiction is proper under 28 U.S.C. § 1332(a)(1). For the reasons that follow, Grandbridge's motion is **DENIED**.

I.    BACKGROUND

River House initiated this action over the alleged failure of Grandbridge to secure a loan insured by the Department of Housing and Urban Development ("HUD") for construction and permanent financing of a multi-family commercial and residential development in Baton Rouge. (Doc. 1-2 at p. 2). River House was founded in 2009 in order to acquire and develop a parcel of land in Baton Rouge into a mixed-

---

[1] In a previous order, this Court dismissed River House's claims for bad faith breach of contract and specific performance under Rule 12(b)(6). (Doc. 27).

1

use development. (Doc. 98-1 at ¶ 10). River House engaged Grandbridge to secure a HUD-insured loan. (Doc. 98-1 at ¶ 11). According to River House, a May 2009 written lending application agreement ("the Agreement") bound Grandbridge to work on River House's behalf to secure the loan. (Doc. 1-2 at p. 2). In January 2010, Grandbridge submitted a pre-application package to HUD. (Doc. 98-1 at ¶ 24). In 2012, HUD issued a Conditional Commitment for mortgage insurance for the River House project. (Doc. 98-1 at ¶ 34). River House Accepted the HUD Conditional Commitment in November of 2012. (Doc. 98-1 at ¶38). After a number of extensions to close the transaction were granted, HUD issued its final extension that ran through December 11, 2013. (Doc. 112-2 at ¶¶ 45, 52). On February 27, 2014, HUD sent a letter to Grandbridge terminating the Conditional Commitment. (Doc. 98-1 at 56).

River House argues that Grandbridge lost a firm commitment made by HUD to insure a loan for the development due to its submission of inaccurate and untimely materials, and its repeated failure to act. (Doc. 112 at pp. 2–3) As a result, River House asserts that it had to secure a conventional loan for the project on terms significantly less favorable than the HUD-guaranteed loan. (Doc. 1-2 at p. 2). It also alleges that it suffered construction delays and increased costs. (Doc. 1-2 at p. 2).

River House initially filed suit in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. (Doc. 1-2 at p. 2). That action was removed to this Court. (Doc. 1 at p. 1). It asserted claims for breach of contract, bad faith breach of contract, negligence, breach of fiduciary duty, and specific performance. (Doc. 1-2 at pp. 9–11).

2

This Court granted in part and denied in part a motion to dismiss (Doc. 10), dismissing the bad faith breach of contract and specific performance claims. (Doc. 27). Defendants filed this Motion for Summary Judgment (Doc. 91) seeking dismissal of the remaining claims.

## II. LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a motion for summary judgment is filed, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin v. Kroger Texas, L.P.*, 846 F.3d 326, 328 (5th Cir. 2017) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008)). At this stage, however, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### III. DISCUSSION

#### A. Breach of Fiduciary Duty

The elements for breach of fiduciary duty in Louisiana are "proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority," *Gerdes v. Estate of Cush*, 958 F.2d 201, 205 (5th Cir. 1992), In order "for a fiduciary duty to exist, there must be a fiduciary relationship between the parties." *Scheffler v. Adams & Reese, LLP*, 2006-1774 (La. 2/22/07); 950 So. 2d 641, 647.

The core dispute in the motion *sub judice* is whether a fiduciary relationship existed. Grandbridge argues that summary judgment is appropriate on the fiduciary duty claim because the Louisiana Credit Agreement Statute ("LCAS") bars River House's claims. (Doc. 98 at pp. 10–11). Alternatively, Grandbridge insists that

4

notwithstanding the LCAS, there is no evidence that River House authorized Grandbridge to act as its agent, and therefore, no fiduciary duty was created. (Doc. 98 at pp. 13–14). River House counters that the statute does not apply to Grandbridge because it does not fit the definition of a "financial institution" under the LCAS. (Doc. 112 at pp. 12–13). River House also insists that regardless of the LCAS's applicability, the Agreement was a written agency contract. (Doc. 112 at pp. 14–15).

As an initial matter, this court determines that the LCAS does not apply to River House's breach of fiduciary duty claim. The LCAS states, in the pertinent part:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties . . . unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.

La. Rev. Stat. ann. § 6:1124. The LCAS defines "financial institution" narrowly as "a bank, savings and loan association, savings banks, or credit union authorized to transact business in [Louisiana]." *Id.* at § 6:1121. The parties do not dispute that Grandbridge does not fit this definition of financial institution, but Grandbridge nonetheless proffers additional arguments for why Section 6:1124 precludes breach of fiduciary duty claims.

First, Grandbridge claims that jurisprudence has broadened the definition of "financial institution" to include mortgage lenders, such as Grandbridge. The cases that Grandbridge cites are neither controlling nor persuasive in this regard. *See Blanchard v. Lee*, No. 13-220, 2013 WL 4459866 at *3 (E.D. La. Aug. 15, 2013) (declining to dismiss a claim under Rule 12(b)(6) because the court could not

5

determine whether the defendant "qualifie[d] for the protection afforded by La. Rev. Stat. 6:1124"); *Nichols v. Lloyds of London*, No. 07-5201, 2008 WL 2510137 at *2 (E.D. La. June 17, 2007) (dismissing claims on Rule 12(b)(6) for failure to allege a written agency or trust agreement, but not analyzing the definition of a financial institution); *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 56 F. Supp. 2d 694, 703 (E.D. la. 1999) (holding that the general purpose of Revised Statutes section 6:1124 "extends not only to banks but to institutions who perform banking functions, such as borrowing and lending," but not citing to or addressing the definitions in Section 6:1121).[2]

Next, Grandbridge cites to the definition of a "financial institution" in a "General definitions" section of the Banks and Banking Title that defines a "financial institution" as "any person organized to engage in the business of banking pursuant to the laws of the United States or any person organized to engage in the business of banking pursuant to this Title." La. Rev. Stat. ann. § 6:2(8). The same section defines "Business of banking" as "lending money, and either receiving deposits, or paying checks anywhere within this state." *Id.* at § 6:2(3). However, the Court finds that the more specific definition contained in the LCAS is applicable, and not the broader definition cited by Grandbridge. *See Burge v. State*, 2010-2229 (La. 2/11/11); 52 So. 3d 1110, 1113 ("The general rule of statutory construction is that a specific statute

---

[2] For the first time, at the hearing on the Motion for Summary Judgment, Grandbridge argued that because it is a wholly owned subsidiary of BB&T bank, it qualifies as a "financial institution" for purposes Section 6:1124. (Doc. 154 at p. 8). Grandbridge cited no law for this proposition and this Court's independent research revealed none. Accordingly, this argument does not support Grandbridge's Motion for Summary Judgment.

6

controls over a broader, more general statute."). Because Grandbridge is not a "financial institution" within the meaning of Section 6:1121, the LCAS does not apply.

That holding does not, however, answer the question of whether an agency relationship existed between the parties. Agency, or mandate, in Louisiana "is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La. Civ. Code art. 2989. An agent "owes fiduciary duties to the principal." *D & J Tire, Inc. v. Hercules Tire & Rubber Co.*, 598 F.3d 200, 207 (5th Cir. 2010) (quoting *Sampson v. DCI of Alexandria*, No. 2007-671 (La. App. 3 Cir. 10/31/07); 970 So. 2d 55, 59). "A principal/agent relationship is not presumed, but is determined from the facts surrounding the parties involved in a given transaction." *Kidd v. Indep. Fire Ins. Co.*, 95-1273 (La. App. 4 Cir. 1/19/96); 668 So. 2d 406, 410. "One is said to act in a fiduciary capacity 'when the business which he transacts . . . is not his own or for his own benefit, but for the benefit of another person,'" and the fiduciary "stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other." *Succession of McKinley*, 2016-503 (La. App. 3 Cir. 12/7/16); 206 So. 3d 959, 967 (quoting *State v. Hagerty*, 205 So. 2d 369, 374–75 (La. 1967)). "As a matter of Louisiana law, a contract, standing alone, does not impose any fiduciary duties upon the parties; rather, a party to a contract is required merely to make a good faith performance of that contract." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994).

7

At this stage, River House has created a genuine issue of material fact concerning whether an agency relationship existed. In particular, it has shown that Grandbridge employees stated that they viewed their role as acting in the best interest of River House. (*See* Doc. 112-4 at p. 234). Grandbridge was also responsible for assembling the HUD Pre-Application Package on behalf of Grandbridge and hiring third parties to assist in the gathering of required materials. (*See* Doc. 112-4 at pp. 193–96, 212). Thus, River House has shown that a genuine issue of material fact exists for trial on the issue of whether Grandbridge was acting as River House's agent.

### B. Breach of Contract

"Under Louisiana law, the essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 2010-0986, (La. App. 4 Cir. 2/9/11); 68 So.3d 1099, 1109. "A failure to perform results from nonperformance, defective performance, or delay in performance." La. Civ. Code art 1994.

The LCAS commands that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." La. Rev. Stat. ann. § 1122. The statute defines a "creditor" as "a financial institution or any other type of creditor that extends credit or extends a financial accommodation under a credit agreement with a debtor." *Id.* at § 1121(2). It further defines a "debtor" as

"a person or entity that obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor." *Id.* at § 1121(3). Finally, a "credit agreement" is "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." *Id.* at § 1121(1).

Grandbridge argues that River House's claims for breach of contract must fail because the Agreement is not a binding contract to lend money. (Doc. 98 at p. 15). It claims that because the Agreement is not a contract to lend money, the LCAS precludes any claims based on breach of contract. (Doc. 98 at pp. 16–17). River House contends that the LCAS only bars the enforcement of an oral credit agreement; yet it is seeking enforcement of a written agreement. (Doc. 112 at p. 17). River House equivocates concerning whether the Agreement was a contract to lend. (*See* Doc. 147 at p. 4) ("This court has already determined that River House did not have a written contract to lend"); *but see* (Doc. 154 p. 23) ("[the parties] agreed to provide funding for a loan closing."). Regardless, River House asserts that the Agreement imposed obligations on Grandbridge apart from lending money that it failed to perform. (Doc. 147 at p. 4).

By its own language, the Agreement is not a binding commitment to lend money. The Agreement, entitled "First Mortgage Loan Application," states that Grandbridge "is willing to consider a first mortgage loan." (Doc. 98-3 at p. 137). One of River House's owners testified that "'willing to consider' is not a commitment per se" (Doc. 98-3 at p. 87) and that "this is a framework for the type of loan that Grandbridge was going to make" (Doc. 98-3 at p. 89). The Court must conclude, at

9

this stage of the proceedings, that River House has failed to produce sufficient evidence to show that the Agreement was a binding commitment for Grandbridge to extend credit. *See Davis v. Delta Bank*, No. 42,529, (La. App. 2 Cor. 11/7/07); 968 So. 2d 1254, 1258 n.4 ("[A]n application to borrow money does not constitute a written loan agreement.")

However, that conclusion may not completely bar River House's breach of contract claims. River House asserts that Grandbridge had a number of obligations arising out of the Agreement independent of the duty to extend credit. Specifically, Section 25 of the agreement required Grandbridge to:

> a. At the application phase, Lender [Grandbridge] shall:
> (i) Prepare the HUD Pre-Application and HUD Firm Application packages, including HUD form 92013, Application for Multifamily Housing Project, and all Exhibits to be submitted therewith;
> (ii) Submit the HUD Pre-Application package and the HUD Firm Application Package to HUD on behalf of Borrower; and
> (iii) Monitor the pre-application processing and firm application underwriting, work with HUD to resolve any issues that may arise, and follow-up with Borrower regarding the status of both the HUD Pre-Application and the HUD Firm Application Packages;
>
> b. Subsequent to receipt of a HUD Firm Commitment, Lender [Grandbridge] shall:
> (i) Work with Borrower to determine terms of rate lock acceptable to Borrower;
> (ii) Obtain competitive quotes in the secondary market for the sale of the Loan Securities to provide Borrower with the most favorable financing terms available at the time of Rate Lock;
> (iii) Advise Borrower on the terms and conditions of the HUD Firm Commitment;
> (iv) Work with Borrower, Borrower's counsel, and HUD in order to expedite the loan closing process;
> (v) Provide funding, either by use of a warehouse line of credit or the sale of Loan Securities, for loan closing; and
> (vi) Attend the loan closing and initial endorsement.

(Doc. 98-3 at p. 142). River House is able to point to specific portions of the record to support a breach of contract claim concerning these provisions of the contract. In fact, one of Grandbridge's employees testified that the Agreement created obligations on Grandbridge. (*See* Doc. 112-4 at p. 212). River House also proffers documents which it claims show deficient performance of Grandbridge. (*See e.g.*, Doc. 112-4 at pp. 473, 476).[3]

Accordingly, genuine issues of material facts exist concerning whether Grandbridge breached provisions of the Agreement.

### C. Negligence

Negligence in Louisiana requires the plaintiff to show five elements:

> (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

---

[3] Although the LCAS does not bar River House's breach of contract claims, this Court notes that the LCAS may operate to limit damages that are predicated on River House's failure to secure a HUD-insured loan because Grandbridge was under no obligation to make such a loan. *See Jesco Const. Corp. v. NationsBank Corp.*, No. 2002-0057, (La. 10/25/02); 830 So. 2d 989, 992; *Davis*, No. 42,529; 968 So. 2d at 1258 n.4. Although the cases address oral agreements, the overriding concern of the LCAS is to prevent parties from bringing claims against a creditor, such as Grandbridge, when the creditor has not clearly obligated itself to extend credit. *See* La. Rev. Stat. ann. § 6:1122; *Jesco*, No. 2002-0057, 830 So. 2d at 992 ("[T]he primary legislative purpose in enacting credit agreement statutes was to establish certainty as to the *contractual* liability of financial institutions." (quoting *Whitney Nat'l Bank v. Rockwell*, No. 94-3049, (La. 10/16/95); 661 So. 2d 1325, 1330)).

*Perkins v. Entergy Corp.*, 2000-1372 (La. 2/23/01); 782 So. 2d 606, 611. A mandatary's negligence can give rise to a tort action distinct from breach of fiduciary duty. *See Gerdes*, 953 F.2d at 205206.

Grandbridge argues that River House's negligence claim is barred because it is merely seeking an "end run" around the LCAS. (Doc. 98 at pp. 17-19). River House insists it is not alleging a negligence claim based on an oral credit agreement. (Doc. 112 at p. 19). Instead, it asserts that it is seeking a negligence claim based on Grandbridge's alleged failure to act as a prudent and diligent administrator pursuant to its obligations established in a written agency agreement. (Doc. 112 at p. 19).

Grandbridge correctly notes that a party cannot pursue a negligence action to the extent a party seeks to enforce an unwritten credit agreement. *See Jesco*, No. 2002-0057, 830 So. 2d at 992. However, this court has already determined that a genuine issue of material fact exists concerning the existence of an agency relationship (*supra* Part III.A). A material factual dispute also exists concerning whether Grandbridge was negligent in submitting River House's application to HUD. (*See* Doc. 112-4 at pp. 473, 476). Therefore, summary judgment is not appropriate on Grandbridge's tort claims.

### D. Suspensive Conditions

In the alternative, Grandbridge asserts that River House failed to complete several suspensive conditions that would have precluded closing of the Agreement. (Doc. 98 at pp. 19–20). Specifically, it claims that River House had no permit prior to the HUD Conditional Commitment's expiration and that there was a right-of way

issue with the property. (Doc. 98 at p. 19). River House argues that these issues never arose during the HUD application process. (Doc. 112 at p. 20). Moreover, River House claims that these items would not have prevented closing on the loan and Grandbridge's claim about the right-of-way is simply inaccurate. (Doc. 112 at p. 20).

Grandbridge does not point to any part of the record where these purported conditions were cited as reasons for the failure to close the loan. Additionally, River House produced testimony from its architect responsible for obtaining permits, who stated that permits are normally not obtained until shortly before a scheduled closing. (Doc. 112-4 at pp. 19–21). It also provided evidence to refute that the right-of-way affected its property. (See Doc. 112-4 at pp. 354–56). Thus, summary judgment is not appropriate based on River House's alleged failure to meet any suspensive conditions.

### E. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 91)**, filed by Grandbridge, is **DENIED**.

Baton Rouge, Louisiana, this 30th day of August, 2017.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**