UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RIVER HOUSE PARTNERS, LLC                                    CIVIL ACTION

VERSUS

GRANDBRIDGE REAL ESTATE                                      NO.: 15-00058-BAJ-RLB
CAPITAL LLC

## RULING AND ORDER

Before the Court are the **Motions in Limine to Exclude the Testimony of Joseph R. Mason, J. Lester Alexander, III, and John G. Minor (Docs. 84, 86, & 88)** filed by Defendant Grandbridge Real Estate Capital LLC ("Grandbridge"). Plaintiff River House Partners, LLC ("River House") filed memorandums in opposition (Docs. 113, 114, & 115) and Grandbridge responded (Docs. 131, 132, & 133). The Court held an evidentiary hearing on the motions on May 17, 2017 (Doc. 149). For the following reasons, Grandbridge's Motions in Limine are **GRANTED IN PART** and **DENIED IN PART**.

I.   BACKGROUND

River House initiated this action over the alleged failure of Grandbridge to secure a loan insured by the Department of Housing and Urban Development ("HUD") for construction and permanent financing of a multi-family commercial and residential development in Baton Rouge. (Doc. 1-2 at p. 2). River House was founded in 2009 in order to acquire and develop a parcel of land in Baton Rouge into a mixed-use development. (Doc. 98-1 at ¶ 10). River House engaged Grandbridge to secure a HUD-insured loan. (Doc. 98-1 at ¶ 11). According to River House, a May 2009 written

lending application agreement ("the Agreement") bound Grandbridge to work on River House's behalf to secure the loan. (Doc. 1-2 at p. 2). In January 2010, Grandbridge submitted a pre-application package to HUD. (Doc. 98-1 at ¶ 24). In 2012, HUD issued a Conditional Commitment for mortgage insurance for the River House project. (Doc. 98-1 at ¶ 34). River House accepted the HUD Conditional Commitment in November of 2012. (Doc. 98-1 at ¶38). After a number of extensions to close the transaction were granted, HUD issued its final extension that ran through December 11, 2013. (Doc. 112-2 at ¶¶ 45, 52). On February 27, 2014, HUD sent a letter to Grandbridge terminating the Conditional Commitment. (Doc. 98-1 at ¶ 56).

River House argues that Grandbridge lost a firm commitment made by HUD to insure a loan for the development due to its submission of inaccurate and untimely materials, and its repeated failure to act. (Doc. 112 at pp. 2–3) As a result, River House asserts that it had to secure a conventional loan for the project on terms significantly less favorable than the HUD-guaranteed loan. (Doc. 1-2 at p. 2). It also alleges that it suffered construction delays and increased costs. (Doc. 1-2 at p. 2).

In support of its claim, River House seeks to offer the testimony of Dr. Joseph R. Mason—a professor of finance and banking at LSU and author of numerous publications on economics and baking—to testify concerning the value of the non-recourse provision in HUD-insured financing.[1] (Doc. 114 at pp. 4, 6–7). River House also retained the services of Mr. J. Lester Alexander, III—a certified public

---

[1] A non-recourse provision is one that prevents the personal assets of the owners of a development project from being seized in the event of a default. (Doc. 114-1 at ¶ 25).

accountant ("CPA") accredited in the field of business valuation—to perform a valuation of "the financial impact of the loss of the HUD insured financing and the attendant delay in development of the River House project associated with obtaining replacement financing." (Doc. 113 at pp. 3, 5). Finally, River House proffers the testimony of Mr. John Minor—a licensed commercial contractor and a Louisiana-licensed insurance appraiser—in order to establish the increase of construction costs in Baton Rouge over the life of the project. (Doc. 115 at p. 3). Through Mr. Minor's testimony, River House seeks to demonstrate that increases in the project's cost were attributable to River House's delay in obtaining financing, and not to changes to the project's design. (Doc. 115 at pp. 3–4). The parties chose not to depose the expert witnesses. (Doc. 115-11 at p. 1).

Through the instant motions, Grandbridge attempts to exclude the testimony of these witnesses as unreliable under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Docs. 95, 96, & 97).

## II. *DAUBERT* LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training, or education" is permitted to testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based upon sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 is effectively a codification of the United States Supreme Court's opinion in *Daubert*, in which the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that it is both "reliable" and "relevant." 509 U.S. at 589. *Daubert* was concerned with limiting speculative, unreliable, and irrelevant opinions from reaching a jury. *Id.* at 589 n.7. However, "the importance of the trial court's gatekeeper role is significantly diminished in bench trials . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. Comm'r of Internal Revenue*, 615 F.3d 321, 330 (5th Cir. 2010).

The validity or correctness of the conclusions an expert reaches is for the fact finder to determine after the *Daubert* analysis. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendments). In a bench trial, courts "should have discretion to admit questionable technical evidence, though of course [the court] must not give it more weight than it deserves." *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003) (Posner, J. sitting by designation), *aff'd on other grounds,* 403 F.3d 1331 (Fed. Cir. 2005); *accord Nassri v.*

*Inland Dredging Co.,* No.11-853, 2013 WL 256747, at *1 (M.D. La. Jan. 23, 2013) (Duval, J.).

Rule 703 provides that the facts or data supporting an expert's opinion "need not be admissible in evidence in order for the opinion or inference to be admitted" if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. Trial courts "should defer to the expert's opinion of what data they find reasonably reliable." *Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1432 (5th Cir. 1989). The number of sources on which an expert may reasonably rely "is virtually infinite," and such sources include interviews, reports prepared by third parties, scientific theories or test results, clinical and other studies, technical publications, business, financial, and accounting records, economic statistics, opinions of other experts, and general knowledge or experience. Jack B. Weinstein and Margaret A. Berger, 4 Weinstein's Federal Evidence § 703.04[3], at 703-15 to 703-20 (2d ed. 2005).

### III. DISCUSION

#### A. Joseph R. Mason

As noted, Dr. Mason issued a report that calculated the value of the non-recourse provision in the HUD-insured loan. (Doc. 114-1 at ¶ 4). The HUD-insured loan was non-recourse, meaning that if River House defaulted on its payments, the lender could not seek payment from the personal assets of River House's principals. (Doc. 114-1 at ¶ 24). The loan that River House ultimately received had a recourse provision, with one of River House's principals guaranteeing the loan with his personal funds. (Doc. 114 at p. 3). To calculate the value of the non-recourse

5

provision, Dr. Mason applied an options valuation, "whereby the principals have the right, but not the obligation, to pass along (put) their responsibility for project losses to another party [HUD]." (Doc. 114-1 at ¶ 26). Utilizing the Black–Scholes valuation model, (Doc. 114-1 at ¶ 28), Dr. Mason estimated that the value of the non-recourse provision was approximately $18 million, (Doc. 114-1 at ¶ 33).

Assuming without deciding that Dr. Mason's methodology is reliable and reliably applied to the facts of this case, the Court will nonetheless exclude Dr. Mason's testimony on the grounds that his testimony would not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The beneficiary of the non-recourse provision is not River House, but its principals, because a non-recourse provision shields the principals' assets in the event of a default. (Doc. 114-1 at ¶ 25). Dr. Mason's testimony explicitly states that he estimated the value of the non-recourse provision to the principals: "I utilize those projections *to estimate the put option value to the principals.*" (Doc. 114-1 at ¶ 31) (emphasis added); (Doc. 114-1 at ¶ 4). However, River House is the plaintiff in this suit, not its principals. (Doc. 1-2 at p. 2). River House, as an LLC, has a legal identity that is distinct from its principals. *See* La. Civ. Code art. 24; *Ogea v. Merritt*, 2013-1085 (La. 12/13/2013); 130 So. 3d 888, 894–95. River House's principals are not parties to this suit; therefore, any loss the principals have suffered—or could potentially suffer—from the failure to obtain HUD-insured financing cannot be imputed to River House. Moreover, as no default has occurred, (Doc. 95-2 at p. 15), any possible future damages stemming from a default are speculative.

6

Accordingly, Grandbridge's Motion in Limine to Exclude the Testimony of Dr. Mason (Doc. 84) is GRANTED.

**B. J. Lester Alexander, III**

Grandbridge also seeks to exclude the testimony of J. Lester Alexander, III, a CPA with over thirty years of experience, who River House intends to offer as an expert on "the financial impact of the loss of the HUD insured financing and the attendant delay in development of River House." (Doc. 113-1 at ¶ 5). Specifically, Mr. Alexander calculated the diminution in value of River House as a result of failing to obtain HUD-backed financing. (Doc. 113-1 at ¶ 7). Mr. Alexander used the discounted cash flow method ("DCF")[2] to calculate the value of River House. (Doc. 113-1 at ¶ 7).

Grandbridge seeks to exclude Mr. Alexander's testimony on the following grounds: it argues (1) that Mr. Alexander bases his opinion on incorrect facts, incomplete data, and assumptions that are contrary to the evidence; (2) that he used different valuation methodologies on the HUD-insured financing and the conventional financing to artificially inflate the damages; (3) that his opinion is based in part on Dr. Mason's opinion; and (4) that he does not adequately explain his choice of certain inputs into his calculation. (Doc. 96 at pp. 8–9).

After considering the arguments of both parties, the Court will allow the testimony of Mr. Alexander on the value of a HUD-insured loan compared to the conventional financing that River House ultimately received. Mr. Alexander is

---

[2] DCF is the calculation of the value of an asset using "the present value of its expected future cash flows." David L. Faigman, et al., 5 Modern Scientific Evidence: The Law and Science of Expert Testimony § 43:22 (2016–17 ed.).

7

qualified to perform such a calculation, having over thirty years of experience, and he has performed and supervised many economic damages calculations, about which he has testified in a number of courts. (Doc. 113-1 at ¶ 2). The Court also finds that DCF is a widely accepted method of valuation. *See Nerco Oil & Gas, Inc. v. Otto Candies, Inc.*, 74 F.3d 667, 669–70 (5th Cir. 1996). Some of Grandbridge's arguments restate issues raised in its motion for summary judgment, which this Court disposed of by an earlier order. (*See* Doc. 96 at pp. 10–12; Doc. 174 at pp. 12–13). Grandbridge raises some valid concerns about Mr. Alexander's choice of certain data on which he based his calculation.[3] However, as the Court's gatekeeping function is not as neccessary during bench trial, *see Whitehouse Hotel*, 615 F.3d at 330, the Court finds that vigorous cross-examination of Mr. Alexander at trial is the appropriate method for Grandbridge to probe the accuracy of his calculations.

Therefore, Grandbridge's Motion in Limine to Exclude the Testimony of Mr. Alexander (Doc. 86) is DENIED.

### C. John G. Minor

Finally, River House seeks to introduce the testimony of John G. Minor, a licensed general contractor and a licensed insurance appraiser. (Doc. 115-4 at p. 2). He has testified and been appointed by federal courts to estimate construction costs multiple times. (Doc. 115 at p. 6). Mr. Minor's original estimate considered Baton

---

[3] To the extent that Mr. Alexander's opinion is based on Dr. Mason's calculation of an equity rate discount for the HUD Debt Terms (Doc. 96 at p. 19), the Court notes that it excluded Dr. Mason's testimony not on the basis of any underlying flaw in his methodology; rather, Dr. Mason's testimony was excluded because River House did not suffer the damages to which he applied that calculation. Moreover, Mr. Alexander did not rely on Dr. Mason's calculation; he stated that his calculation "is conservative when compared to the opinion of LSU professor, Dr. Joseph R. Mason." (Doc. 113-1 at ¶ 8).

Rouge construction costs in 2010 and 2015. (Doc. 115-4 at p. 2). Subsequently, Mr. Minor conducted a supplemental analysis on increases from 2013 to 2015. (Doc. 115-8 at p. 1). As a result, River House reduced the amount of damages it seeks to reflect the purported 2013 to 2015 increase. (Doc. 115-9 at p. 1).

Grandbridge argues that since it did not cause the construction delays, Mr. Minor's opinion is irrelevant. (Doc. 97 at pp. 7–11). Grandbridge further claims that Mr. Minor's opinion is speculative and unreliable because of the figures he used to estimate the cost of the project. (Doc. 97 at pp. 11–13). Specifically, Grandbridge pushes back against his comparison of a not-to-exceed contract price to the estimate by a contractor. (Doc. 97 at pp. 11–12). Moreover, Grandbridge insists that other factors not considered in Mr. Minor's estimate could have contributed to the increased cost of the project. (Doc. 97 at pp. 13–15). Finally, Grandbridge claims that Mr. Minor's methodology is unreliable because he fails to fully explain certain features of his calculation, such as why the price is higher than the percentage increase he calculated, why he did not account for the contractor's profits in the 2010 price, and why he chose to look at the increase in multi-family permits instead of commercial permits. (Doc. 97 at pp. 16–18). Grandbridge also seeks to exclude Mr. Minor's testimony concerning the cost of construction increases from 2013 to 2015 for many of the same reasons. (Doc. 133 at pp. 1–2).

At this stage, the Court will allow Mr. Minor to testify as an expert. Through its revision of damages (Doc. 115-9 at p. 1), it appears that River House is limiting Mr. Minor's testimony to his calculation of construction cost increases from 2013 to 2015. (*See* Doc. 115 at p. 7). Mr. Minor has extensive experience in construction cost

estimating. (Doc. 115 at p. 6). Although Grandbridge argues that Mr. Minor's analysis is nothing more than subtraction (Doc. 97 at p. 3), he is also being offered as an expert to calculate the percentage increase in cost in the Baton Rouge construction market by analyzing multiple sources (Doc. 115 at p. 3–4). He also reviewed the plans for the project and reached the conclusion that any increases in the project's price were not attributable to changes in the design. (Doc. 115-8 at p. 5). While Grandbridge avers that it is not responsible for any delay in construction, that issue is not related to Mr. Minor's qualifications and methodology. Grandbridge will have every opportunity to point out alleged flaws in Mr. Minor's testimony and calculations on cross-examination at trial.

For these reasons, Grandbridge's Motion in Limine to Exclude the Testimony of Mr. Minor (Doc. 86) is DENIED.

IV.  CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the **Motion in Limine to Exclude the Testimony of Joseph R. Mason (Doc. 84) is GRANTED**.

**IT IS FURTHER ORDERED** that the **Motion in Limine to Exclude the Testimony of J. Lester Alexander, III (Doc. 86), is DENIED**.

**IT IS FURTHER ORDERED** that the **Motion in Limine to Exclude the Testimony of John G. Minor (Doc. 88), is DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Strike Declarations of Joseph R. Mason and J. Lester Alexander, III, Submitted in Opposition to Motions in Limine to Exclude Their Testimony (Doc. 124) is DENIED** as moot.

Baton Rouge, Louisiana, this 26th day of September, 2017.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA